```
1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION

3
     UNITED STATES OF AMERICA,       Case No. 1:18-cr-484
4                                    Cleveland, Ohio
              Plaintiff,
5
         vs.                         TUESDAY, SEPTEMBER 4, 2018
6

7    RUFUS TAYLOR,

8               Defendant.

9

10

11             TRANSCRIPT OF CHANGE OF PLEA HEARING
          HELD BEFORE THE HONORABLE THOMAS M. PARKER
12              UNITED STATES MAGISTRATE JUDGE

13
     APPEARANCES:
14
     For the Plaintiff:       Chelsea S. Rice,
15                            Elliot D. Morrison,
                              Assistant United States Attorneys
16

17   For the Defendant:       Michael H. Peterson, Esquire

18

19
     Official Court Reporter: Lance A. Boardman, RDR, CRR
20                            United States District Court
                              801 West Superior Avenue
21                            Court Reporters 7-189
                              Cleveland, Ohio 44113
22                            216.357.7019

23

24   Proceedings recorded by mechanical stenography from a
     digital audio recording; transcript produced by
25   computer-aided transcription.
```

1          (In open court at 2:23 p.m.)

2                    THE COURTROOM DEPUTY:  This United States

3    District Court for the Northern District of Ohio is now open

4    for the transaction of business, the Honorable Thomas M.

5    Parker presiding.

6                    THE COURT:  Good afternoon everyone.

7          Counsel, if you would, please indicate your

8    appearances for our record today.

9                    MS. RICE:  Good afternoon, Your Honor.

10   Chelsea Rice, Assistant United States Attorney, on behalf of

11   the United States.

12                   MR. MORRISON:  And Elliot Morrison, Assistant

13   United States Attorney.

14                   THE COURT:  Good morning, Counsel.

15                   MR. PETERSON:  Your Honor, Michael Peterson,

16   representing the defendant in this matter.

17                   THE COURT:  Good afternoon, Mr. Peterson.

18         I apologize for the delay.  The Court had some

19   initial information that I needed to take care of.

20         Good afternoon, Mr. Taylor.

21         The case is on the Court's docket here today because

22   I've been informed that the defendant has made a decision to

23   enter a plea of guilty to an information that has been filed

24   in this matter.

25         So, Mr. Taylor, it's necessary that I go through a

1    series of formal steps in order to make sure that we've

2    complied with all the requirements of the Rules of Criminal

3    Procedure and also to comply with all of your constitutional

4    rights.  We're going to begin the hearing today by

5    arraigning you on the charges that have been brought against

6    you.

7            Arraignment simply means you're being formally

8    advised in court of the charges included in the information.

9    After the arraignment, I will then proceed to discuss with

10   you the potential entry of your plea.

11           You may plead guilty or not guilty at any point in

12   today's hearing.  In other words, the fact that we've

13   started the hearing with a view that you may enter a plea of

14   guilty does not mean that you're required to do so.

15           Do you understand that?

16           Is your microphone on?

17                   MR. PETERSON:  Oh, I'm sorry.  Yes.  Yes.

18                   THE COURT:  All right.  Thank you.

19                   MR. PETERSON:  You can't hear?

20           Can you hear this one better?

21                   THE DEFENDANT:  Yes.  Can you hear it?  I need

22   to press it?

23                   MR. PETERSON:  No, no, you don't need to press

24   it, only if you want to shut it off.

25                   THE DEFENDANT:  Can you hear me now?

1              THE COURT:  All right.  Mr. Taylor, let me

2     just indicate to you if you decided not to plead guilty in

3     this case, the matter would be set for trial before Judge

4     Boyko, and you could fully exercise your constitutional

5     rights.  But I have been informed that you have decided to

6     enter a plea of guilty.

7          Is that correct?

8              THE DEFENDANT:  That is correct.

9              THE COURT:  All right.  During the hearing I'm

10    going to take up several matters.  First, as mentioned,

11    you'll be formally advised of the charges and the maximum

12    potential penalties associated with those charges, you'll be

13    advised of your right to counsel, you'll be advised of your

14    right to remain silent.

15         I am required to go through a series of questions to

16    make sure that you are competent or in a proper state of

17    mind in order to be able to proceed today and also ensure

18    that any plea you enter is freely and voluntarily and

19    knowingly entered.  In order to do that, I've got to make

20    sure you understand the constitutional rights you give up if

21    you enter a plea of guilty.

22         And I also must determine that there is a proper

23    factual basis to support the plea.

24         Then lastly, you'll be given an opportunity to enter

25    a plea in response to the information.

1           So let me begin by indicating that you are here today

2     on an information that was filed on August 24, 2018.  That

3     information contains two counts.

4           Do you have a copy of the information available to

5     you?

6                     MR. PETERSON:  This is the information.

7                     THE DEFENDANT:  Yes.

8                     MR. PETERSON:  We have it, Your Honor.

9                     THE COURT:  All right.  Very well.

10          Now, I'm going to ask Ms. Rice to indicate what

11    the -- in summary fashion, what the charge is in each count

12    and what the maximum potential penalties are for those

13    charges.

14                    MS. RICE:  Thank you, Your Honor.

15          Mr. Taylor is charged in a two-count information.

16    Count 1 charges Mr. Taylor with a violation of Title 18

17    United States Code Section 666(a)(1)(B), bribery concerning

18    a program receiving Federal funds.  The maximum term of

19    imprisonment for this offense is 10 years.  The maximum

20    statutory fine, $250,000.  Maximum period of supervised

21    release is three years.  And there is a $100 special

22    assessment.

23          Count 2 of the information charges Mr. Taylor with a

24    violation of Title 18 United States Code Section 1951, Hobbs

25    Act extortion under color of official right.  The maximum

1    term of imprisonment for this offense is 20 years.  The

2    maximum fine is $250,000.  The maximum period of supervised

3    release is three years.  And there is also a $100 special

4    assessment for this offense.

5                  THE COURT:  All right.  Thank you.

6          Mr. Taylor, let me indicate to you, sir, that you

7    have a right to have the information read to you word for

8    word from beginning to end in its entirety, or you may waive

9    a reading of the information.

10         Which do you prefer to do?

11                 THE DEFENDANT:  I waive the reading.

12                 THE COURT:  Now, sir, you do have a

13   constitutional right to be represented by an attorney at

14   every stage of the proceedings.  If you're not able to

15   afford an attorney, the Court would appoint one without cost

16   to you to represent you.

17         Do you understand your right to an attorney?

18                 THE DEFENDANT:  Yes, I do.

19                 THE COURT:  I understand that you have

20   retained the services of Attorney Michael Peterson.

21         Is that correct?

22                 THE DEFENDANT:  That is correct.

23                 THE COURT:  Can you confirm for the record

24   that he is here today serving as your legal counsel?

25                 THE DEFENDANT:  That is correct.

1          THE COURT:  I want to advise you, Mr. Taylor,

2     that to the extent you're here today to enter a plea of

3     guilty, it's important to remember that you do have a right

4     to enter a plea before the assigned district judge, Judge

5     Christopher Boyko.

6          Do you understand that?

7               THE DEFENDANT:  Yes.

8          THE COURT:  You may, however, consent to the

9     magistrate judge conducting today's hearing and receive your

10    plea.  Ultimately, Judge Boyko would be the person

11    responsible for determining the sentence even if I conducted

12    today's hearing.

13         Do you understand that?

14               THE DEFENDANT:  Yes, I do.

15         THE COURT:  Have you discussed with your

16    attorney whether or not you should consent to my conducting

17    today's hearing?

18               THE DEFENDANT:  Yes.

19         THE COURT:  Now, I have in my possession a

20    consent to order referral to the magistrate judge for

21    purposes of receiving a plea of guilty.  It appears to have

22    been signed by you.

23         Did you sign that consent form here in court today?

24               THE DEFENDANT:  Yes.

25               THE COURT:  Did you read it before you signed

1    it?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Did you discuss with counsel what

4    it was you were agreeing to by signing this agreement?

5                    THE DEFENDANT:  That's correct.

6                    THE COURT:  And, Mr. Taylor, do you consent to

7    me conducting today's plea hearing in connection with this

8    matter?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  The Court will find that you've

11   made a knowing, voluntary, and intelligent decision to

12   consent to this Court conducting the proceeding.

13        It appears that the consent form still needs to be

14   signed by the U.S. Attorney's Office, so I'm going to

15   provide that to Attorney Rice at this point.  And I will

16   assume by her signature that the Government also does

17   consent.

18        All right.  So, Mr. Taylor, let me just confirm that

19   by consenting to me conducting today's hearing, you will be

20   giving up your right to proceed to have a plea before Judge

21   Boyko.

22        And do you understand that?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  And do you still wish to proceed

25   with the hearing before me today?

1                    THE DEFENDANT:  That is correct, yes.

2                    THE COURT:  All right.  Mr. Taylor, there are

3    a number of constitutional rights that you have that are

4    implicated in today's hearing.  During the course of today's

5    hearing, I am going to review each of those rights with you.

6    It's going to take some time to go over this matter.  You

7    should feel free to ask questions either of me or of your

8    attorney at any point in time.

9         Do you understand that?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  If there's anything that I say to

12   you that you don't understand, please tell me that, and I

13   will clear it up.

14        Do you understand that?

15                   THE DEFENDANT:  Yes, I do.

16                   THE COURT:  Now, sir, you have a

17   constitutional right, as I mentioned a few moments ago, to

18   plead not guilty and to stand by your plea.  And I'm going

19   to repeat that even though you've expressed a present

20   intention to plead guilty, you have a right to change your

21   mind at any point in time during the course of today's

22   hearing.

23        Do you understand that?

24                   THE DEFENDANT:  Yes, I do.

25                   THE COURT:  Now, you also have a

1    constitutional right to have this case presented to a grand

2    jury for its consideration.  If the case is presented to a

3    grand jury, the grand jury would make a determination as to

4    whether there is probable cause to believe crimes were

5    committed, number one, and, number two, probable cause to

6    believe that you were the individual who committed those

7    offenses.

8          Do you understand that you have a constitutional

9    right to have the case presented to a grand jury?

10                    THE DEFENDANT:  Yes, I do.

11                    THE COURT:  And do you understand that the

12    Government can only proceed against you by way of an

13    information if you consent in writing to go by way of

14    information as opposed to grand jury indictment?

15                    THE DEFENDANT:  I understand.

16                    THE COURT:  Now, I have in my possession a

17    waiver of indictment form which states, "I understand I've

18    been accused of one or more offenses punishable by

19    imprisonment for more than one year.  I was advised in open

20    court of my rights and nature of the proposed charges

21    against me.  After receiving this advice, I waive my right

22    to prosecution by indictment and consent to prosecution by

23    information."

24          The document appears to have been signed by you.  Did

25    you sign that document, Mr. Taylor?

1                     THE DEFENDANT:  Yes, I did.

2                     THE COURT:  Did you sign it only after first

3    having read it and discussed it with your attorney?

4                     THE DEFENDANT:  Yes.

5                     THE COURT:  And do you understand that you are

6    giving up your right to proceed by way of a grand jury

7    indictment if the Court acts on this waiver?

8                     THE DEFENDANT:  Yes.

9                     THE COURT:  The Court will find that you made

10   a knowing, voluntary, and intelligent decision to waive your

11   right to grand jury presentment.  I will accept the waiver,

12   and we will proceed by way of information.

13        All right.  Mr. Taylor, during the course of today's

14   hearing I'm going to ask you a series of questions.  As

15   you've been able to tell, the court reporter is making a

16   record of what we're doing here.  She's actually using an

17   electronic recording system.  It's important to keep that in

18   mind because an electronic recording system can only record

19   what we say, not what we do.  So if you were to nod your

20   head in response to one of my questions, there would be no

21   record of that.  So please do continue to keep your answers

22   verbal so that we can make an accurate record.

23        Do you understand that?

24                     THE DEFENDANT:  Yes, I do.

25                     THE COURT:  Now, none of the questions that

1    I'm going to ask you are designed to embarrass you in any

2    way.  And at any point in time you wish to speak to your

3    attorney, you may do so at any time.

4         Do you understand that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Now, I want to advise you that you

7    have the right to remain silent.  You're not required to

8    make any statements.  Anything you do say may be used

9    against you.

10        Before receiving your guilty plea, there are a number

11   of questions that I will ask you to assure that your plea is

12   valid.  By answering these questions, you will be making

13   statements against your interest, and you will be

14   incriminating yourself.

15        Do you understand that by proceeding here today with

16   a plea of guilty, you will necessarily be giving up your

17   right to remain silent?

18              THE DEFENDANT:  Yes, I understand.

19              THE COURT:  At this point I'm going to ask you

20   to please stand and raise your right hand so that the clerk

21   may swear you in.

22        (The defendant was sworn.)

23              THE COURT:  Mr. Taylor, you may be seated.

24   Thank you very much.

25        You now have been sworn and are under oath to tell

1   the truth.  Your answers to the Court's questions, as just

2   mentioned, will be subject to the penalties for perjury if

3   you do not tell the truth.

4        Do you understand that?

5             THE DEFENDANT:  Yes, I do.

6             THE COURT:  As a part of today's hearing, I do

7   need to ensure that you are in a correct state of mind in

8   order to be able to proceed.  This requires me to ask

9   simply -- or a few simple background questions.  If any

10  question I ask you is something that you need to have

11  clarified, please tell me that and I will do so.  And as

12  mentioned, if you wish to speak to your attorney, please

13  tell me that as well.

14        If you would, state your full name, including your

15  middle name, for the record.

16             THE DEFENDANT:  My full name is Rufus Taylor.

17             THE COURT:  All right.  And what is your age

18  currently?

19             THE DEFENDANT:  I am 60 years old.

20             THE COURT:  Are you a citizen of the United

21  States?

22             THE DEFENDANT:  Yes, I am.

23             THE COURT:  How far did you go in your formal

24  schooling?

25             THE DEFENDANT:  Two years of college.

1            THE COURT:  And I assume you have no problems

2    whatsoever in speaking, reading, writing, and understanding

3    the English language.

4        Correct?

5            THE DEFENDANT:  Correct.

6            THE COURT:  And prior to coming to court

7    today, have you maintained any recent employment?

8            THE DEFENDANT:  No.

9            THE COURT:  When's the last time you had

10   recent -- or had employment?

11           THE DEFENDANT:  Close to about a year, eight,

12   nine months ago.  December or so.

13           THE COURT:  Do you have any difficulty

14   managing your own affairs?

15           THE DEFENDANT:  None.

16           THE COURT:  Are you currently on any form of

17   probation, parole, or supervised release for any other state

18   or Federal convictions?

19           THE DEFENDANT:  No.

20           THE COURT:  Do you understand that by pleading

21   guilty here today -- well, let me just drop that.  I'll come

22   back to that in a moment.

23       Switching gears on you, let me ask whether within the

24   past 12 months you have received any forms of treatment or

25   hospitalizations for any kind of mental illness or

1    psychological condition, for any kind of drug, alcohol, or

2    narcotic addictions?

3                    THE DEFENDANT:  None.

4                    THE COURT:  Within the past 24 hours, have you

5    taken any medications, drugs, or consumed any alcohol?

6                    THE DEFENDANT:  Just a blood pressure pill.

7                    THE COURT:  Is there anything in your system

8    right now, Mr. Taylor, that in any way affects your ability

9    to understand what we are doing here today?

10                   THE DEFENDANT:  No.

11                   THE COURT:  Mr. Peterson, do you have any

12   doubts about your client's competence to proceed?

13                   MR. PETERSON:  Absolutely not, Your Honor.

14                   THE COURT:  Pardon?

15                   MR. PETERSON:  Absolutely not.

16                   THE COURT:  All right.  Thank you.

17         Mr. Taylor, do you feel you understand what the

18   purpose is of today's hearing?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  And tell me in your own words what

21   you understand that purpose to be.

22                   THE DEFENDANT:  To gather what's needed to be

23   gathered and to overgo the charges that are presented to the

24   Court.

25                   THE COURT:  And do you -- what do you

1    understand is going to occur during the course of the

2    hearing today?

3                    THE DEFENDANT:  Several questions going to be

4    asked about what went on, I would say.

5                    THE COURT:  All right.  And then what do you

6    think the endpoint in the hearing will be?

7                    THE DEFENDANT:  I'm pleading guilty.

8                    THE COURT:  All right, sir.

9        Mr. Taylor, have you discussed with your attorney the

10   charges in the information to which you intend to plead

11   guilty and any penalties associated with those charges?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Have you told your lawyer

14   everything you know about the facts and circumstances of the

15   case?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  Have you had -- have you reviewed

18   with your counsel the terms of the plea agreement and have

19   you had an opportunity to ask him any questions you may have

20   concerning the meaning of any of the terms of the plea

21   agreement?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  Are you completely satisfied with

24   the representation you have received from Attorney Peterson

25   up to this moment in time?

1              THE DEFENDANT:  Yes, I am.

2              THE COURT:  And, Mr. Peterson, have you

3    advised your client regarding any and all plea offers made

4    by the Government in this matter?

5              MR. PETERSON:  I have, Your Honor.

6              THE COURT:  Now, Mr. Taylor, we're going to

7    switch topics at this point and move into a discussion of

8    the constitutional rights that you give up if you determine

9    and decide to enter a plea of guilty in this case.

10         You have a right to proceed to trial, and it can be a

11   trial by jury.  By proceeding with a plea of guilty, you are

12   going to give up that right and other rights associated with

13   the trial.  So when you proceed to trial, essentially what

14   you do is you stand by your guilty plea [sic] and require

15   the Government to prove the case.

16         You'd have the right to have a trial by jury,

17   including at that trial having the assistance of counsel.

18   And during the course of that trial you would not be

19   required to prove anything, including particularly you would

20   not be required to prove that you were innocent.

21         Do you understand that?

22              THE DEFENDANT:  Yes, I do.

23              THE COURT:  Do you understand you have each of

24   those rights?

25              THE DEFENDANT:  Yes.

1            THE COURT:  Now, in the course of -- pardon

2    me.

3            In the information you've been charged with violating

4    specific provisions of the United States Code, specifically

5    Title 18 Section 666(a)(1)(B), and also Title 18 Section

6    1951(a).  In a few moments I'm going to go over the elements

7    of those offenses with you.

8            At trial, if you were to proceed to trial, the

9    Government would be required to prove every one of the

10   essential elements of these offenses beyond a reasonable

11   doubt.  That's all included within your trial rights.

12           So do you understand your right to a trial by jury

13   and that by pleading guilty here today you are going to give

14   up permanently that right?

15                THE DEFENDANT:  Yes, I do.

16                THE COURT:  You also have a right to use

17   what's called compulsory process.  That is the right to have

18   subpoenas issued in order to require witnesses to come to

19   court who could offer favorable testimony.

20           Do you understand you have that right?

21                THE DEFENDANT:  I understand.

22                THE COURT:  Do you understand by pleading

23   guilty here today you're going to give up that right?

24                THE DEFENDANT:  Yes.

25                THE COURT:  If the case were to proceed to

1    trial, you would have the right to confront or cross-examine

2    the Government's witnesses.

3         Do you understand that you have that right?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  And do you understand, Mr. Taylor,

6    by pleading guilty today, you will give up the right to

7    confront the Government's witnesses?

8              THE DEFENDANT:  Yes.

9              THE COURT:  You have a right to remain silent

10   while at a trial.  You would have the right to take the

11   witness stand and testify if you wished, but you cannot be

12   compelled to take the witness stand and testify.  And you

13   could go through the entire trial while maintaining your

14   right against self-incrimination.

15        Do you understand you have that right?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand by pleading

18   guilty here today, you're going to give up that right?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Now, I've mentioned on two

21   occasions so far your right to remain silent and not to

22   incriminate yourself.

23        Do you understand you have that right?

24             THE DEFENDANT:  Yes, I understand.

25             THE COURT:  You understand by pleading guilty

1    here today, you're going to give up that right?

2                    THE DEFENDANT:  That is correct.

3                    THE COURT:  So, Mr. Taylor, to summarize, if

4    you enter a plea of guilty today and Judge Boyko accepts

5    that plea, you will give up your right to trial and you'll

6    give up your other trial-related constitutional rights that

7    I have discussed.  There would be no trial, and the district

8    judge will enter a judgment of guilty and sentence you on

9    the basis of your plea after he considers a presentence

10   report.

11                   THE DEFENDANT:  I understand.

12                   THE COURT:  Do you understand that the

13   offenses to which you would be pleading guilty are both

14   felony offenses and that a judgment of guilty may deprive

15   you of valuable civil rights, including the right to vote,

16   the right to hold public office, the right to serve on a

17   jury, and the right to possess firearms under certain

18   circumstances?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  All right.  We've had the counts

21   in the information previously described to you.  And do you

22   have a copy of the information on the table available to

23   you, Mr. Taylor?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  You've previously said that you

1    have discussed with counsel the nature of those charges.

2                   THE DEFENDANT:  Mm-hmm.

3                   THE COURT:  And it might also assist you to

4    turn to page 3 of the plea agreement.

5         So if you look at page 3 of the plea agreement,

6    beginning at paragraph 10 toward the bottom of the page and

7    then carrying over to the top of page 4, you will see the

8    two counts listed.

9         Do you see them, Mr. Taylor?

10                  THE DEFENDANT:  Yes.

11                  MR. PETERSON:  Right there.

12                  THE COURT:  They're actually listed in reverse

13   order from the order in which they appear in the

14   information.  So at the top of page 4 in the plea agreement,

15   you'll see the charge of bribery concerning a program

16   receiving Federal funds.

17                  THE DEFENDANT:  Yes.

18                  THE COURT:  The alleged violation of 18 United

19   States Code Section 666(a)(1)(B).

20        Do you see that?

21                  THE DEFENDANT:  Yes, I do.

22                  THE COURT:  Now, you can see that in this

23   section of the plea agreement the elements of that offense

24   are set forth.  I want to review them with you.

25        In order for the charge to be proven by the

1    Government, they would have to establish four elements:

2           Number one, that you were an agent of an

3    organization, agency, or governmental unit.

4           Number two, they would have to prove that on or about

5    the dates as charged you corruptly solicited or demanded for

6    the benefit of another person or entity or accepted or

7    agreed to accept from another person or entity something of

8    value in connection with any business transaction or series

9    of transactions.

10          Three, they would have to prove that the business

11   transaction involved something of value of $5,000 or more.

12          And four, that the organization, agency, or

13   governmental unit received benefits in excess of $10,000 in

14   a one-year period surrounding the dates of the offense

15   charged, pursuant to a Federal program involving a grant,

16   contract, subsidy, loan, guarantee, insurance, or other form

17   of Federal assistance.

18          Do you see the elements for Count 1 of the

19   information?

20                 THE DEFENDANT:  Yes.

21                 THE COURT:  If you turn back to page 3 in the

22   plea agreement, you can see the Hobbs Act extortion claim

23   which is alleged under Title 18 United States Code Section

24   1951.

25          Do you see that?

1                 THE DEFENDANT:  Yes.

2                 THE COURT:  The elements of that offense would

3    require the Government to establish beyond a reasonable

4    doubt that:

5           Number one, you wrongfully obtained or attempted to

6    obtain property from another with that person's consent.

7           Number two, that you did so under the color of

8    official right.

9           And, number three, that your conduct interfered with

10   or affected interstate commerce.

11          Do you see each of those three elements?

12                THE DEFENDANT:  Yes, I do.

13                THE COURT:  Mr. Taylor, do you feel you

14   understand the elements of the two offenses included in the

15   information?

16                THE DEFENDANT:  Yes, Your Honor.

17                THE COURT:  Do you have any questions

18   regarding any of those elements?

19                THE DEFENDANT:  None whatsoever.

20                THE COURT:  And, Mr. Peterson, you've gone

21   over these elements of the offenses with your client,

22   correct?

23                MR. PETERSON:  I have, Your Honor.

24                THE COURT:  And do you feel he understands

25   each of those elements?

1           MR. PETERSON:  Yes.  We spent a lot, a lot of

2    time together.  He understands everything.

3           THE COURT:  All right.  And, Mr. Taylor, you

4    heard the description by the assistant United States

5    attorney earlier of the potential penalties for each of

6    those counts.

7        Correct?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And if you look at the plea

10   agreement, and specifically paragraph number 2 on page 2,

11   those penalties are listed in writing.

12       Do you see that?

13          THE DEFENDANT:  Statutory penalties?

14          MR. PETERSON:  Yes.

15          THE COURT:  Pardon?

16          THE DEFENDANT:  Statutory penalties?

17          THE COURT:  Yes, sir.

18          THE DEFENDANT:  Yes.

19          THE COURT:  So you can see for Count 1 the

20   maximum potential imprisonment is 10 years and a potential

21   fine of up to $250,000.  And for Count 2, the maximum term

22   of imprisonment is 20 years with a maximum fine of up to

23   $250,000.

24       Do you see that?

25          THE DEFENDANT:  Yes.

1            THE COURT:  There is going to be a request for

2     restitution, I believe, in this case.

3         Is that correct?

4            MS. RICE:  That's correct, Your Honor.

5            THE COURT:  And is there anything else that

6     the defendant is being required to forfeit other than a

7     restitution sum?

8            MS. RICE:  Your Honor, there is an agreement

9     to request of the Court at the time of sentencing that

10    $3,925, which actually is currently in possession of the

11    FBI, be implemented as a fine.  So it is not in his

12    possession, and he has agreed to that.

13            THE COURT:  All right.

14        Mr. Taylor, did you hear what Ms. Rice has said about

15    that topic?

16            THE DEFENDANT:  Yes.

17            THE COURT:  And do you understand that also is

18    part of this agreement?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Also as a part of the potential

21    sentencing penalty structure for these two counts, you would

22    be required to pay a special assessment of $100 on each

23    count and face potential supervised release after any prison

24    term of up to three years.

25         Do you understand that?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Now, do you understand that if you

3    are sent to prison and released on a term of supervised

4    release, if during the course of your period of supervised

5    release the district judge were to find that you had

6    violated a condition of your supervision, he would have the

7    right to send you back to prison for up to two additional

8    years.

9        Do you understand that?

10           THE DEFENDANT:  Yes, I do.

11           THE COURT:  And that would be regardless of

12   how much of your term of supervised release you had already

13   served.  So let's say he puts you on three years of

14   supervised release and, you know, two years and 10 months

15   into it, you know, you commit a new offense.

16       Do you realize even though you only had two months of

17   supervised release left, Judge Boyko could return you to

18   prison for up to two additional years?

19           THE DEFENDANT:  I understand.

20           THE COURT:  And if he sentenced you to less

21   than two additional years, he could impose a new full

22   three-year term of supervised release after your release

23   from prison.

24       Do you understand that?

25           THE DEFENDANT:  Yes, I do.

1              THE COURT:  Now, what I'm about to tell you

2   might seem a strange thing to you, but this Court believes

3   in adhering strictly to the decisions rendered by the Sixth

4   Circuit Court of Appeals.

5         Recently, that Court has ruled that if a court fails

6   to advise a defendant of the immigration consequences of his

7   plea, the plea might not be deemed to be voluntary.  So I'm

8   going to tell you that under Rule 11, a person convicted who

9   is not a United States citizen may be removed from the

10  United States, denied citizenship, and denied admission to

11  the United States in the future.

12        Do you understand that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  You've told me that you are a U.S.

15  citizen, which should render that provision inapplicable to

16  you.  But in order to strictly comply, I've given you that

17  advice.

18        Now, Mr. Taylor, let me ask you, sir, is the decision

19  that you are making to enter a plea of guilty the result of

20  your own exercise of your free will?

21              THE DEFENDANT:  That is correct.

22              THE COURT:  Has anyone threatened you or

23  pressured you or in any way forced you to enter a plea of

24  guilty here today?

25              THE DEFENDANT:  No.

1          THE COURT:  Has there been any plea agreement

2     entered into between you and counsel for the Government?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Now, apart from that

5     plea agreement, have any other promises been made to you to

6     induce you to enter a plea of guilty here today?

7          THE DEFENDANT:  No.

8          THE COURT:  Do counsel for the Government and

9     the defendant each have a copy of the plea agreement?

10          MS. RICE:  Yes, Your Honor.

11          MR. PETERSON:  Yes, Your Honor.

12          THE COURT:  Now, I have on the bench what

13     happens to be the originally signed agreement.

14      Mr. Peterson, did you sign the plea agreement here in

15     court today?

16          MR. PETERSON:  I did, Your Honor.

17          THE COURT:  And, Mr. Taylor, did you also sign

18     the plea agreement here in court today?

19          THE DEFENDANT:  Yes, I did.

20          THE COURT:  I'm assuming you had that document

21     before you came to court today so you could have an

22     opportunity to read it over carefully.

23      Is that correct?

24          THE DEFENDANT:  That is correct.

25          THE COURT:  Did you read the document before

1      you came to court today?

2                     THE DEFENDANT:  Yes.

3                     THE COURT:  And did you sign it only after

4      discussing the terms of the agreement with your attorney?

5                     THE DEFENDANT:  Yes.

6                     THE COURT:  Do you feel you understand the

7      terms of this plea agreement?

8                     THE DEFENDANT:  I do.

9                     THE COURT:  And, Ms. Rice or Mr. Peterson,

10     either one, can you in very summary fashion indicate what

11     the substance of the plea agreement is?

12                    MS. RICE:  Yes, Your Honor.

13              In substance, Mr. Taylor agrees to plead guilty to

14     the information.  And the parties to recommend at the time

15     of sentencing that the subtotal offense level before

16     acceptance is a level 24.  The parties agree that no other

17     reductions are applicable other than what's provided for in

18     the plea agreement.  And the parties agree and acknowledge

19     that sentencing at the end of the day rests with Judge

20     Boyko, and he will make the ultimate sentencing decisions.

21                    THE COURT:  Thank you.

22                    MS. RICE:  Thank you, Your Honor.

23                    THE COURT:  Mr. Peterson, you've heard the

24     summary of the plea agreement.  Do you feel that that has

25     been an accurate description in summary fashion of what's

1    been agreed to?

2              MR. PETERSON:  Absolutely, Your Honor.

3         Just for the record, the defendant and I have spent

4    many hours together going through the plea agreement, the

5    guidelines.  He understands those guidelines.  He

6    understands the three points for acceptance of

7    responsibility.  He has no questions relative to that.  And

8    he voluntarily signed the plea agreement.

9              THE COURT:  And, Mr. Taylor, do you agree with

10   everything that Attorney Peterson just said?

11             THE DEFENDANT:  Yes.

12             THE COURT:  All right.  So I want to draw your

13   attention to a few specific points in the plea agreement.

14        If you would, turn to page 5 of that agreement.

15        Mr. Taylor, do you see that paragraph number 14

16   begins with the heading stating "Sentencing Recommendations

17   Not Binding on the Court"?

18             THE DEFENDANT:  Yes.

19             THE COURT:  That paragraph essentially says

20   that you understand that the recommendations that the

21   parties will make as far as the application of the

22   sentencing guidelines are not binding upon the district

23   judge.

24        Do you understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  The decision whether to adopt a

2    recommended sentence or not, whether to vary from the

3    guidelines or not, rests entirely within the discretion of

4    the district judge.

5          Do you understand that?

6               THE DEFENDANT:  Yes.

7          THE COURT:  This paragraph states specifically

8    that the defendant further understands that once the Court

9    has accepted defendant's guilty plea, defendant will not

10   have the right to withdraw such a plea if the Court does not

11   accept any sentencing recommendations made on defendant's

12   behalf or if the defendant's otherwise dissatisfied with the

13   sentence.

14         Do you see the part I just read?

15              THE DEFENDANT:  Yes, I do.

16         THE COURT:  So what that means essentially is

17   if you end up with a sentence that's more severe than might

18   have been predicted for you by your attorney or what you

19   were expecting, you would not at that point have the right

20   to withdraw your plea and ask to take the case to trial.

21         Do you understand that?

22              THE DEFENDANT:  I understand.

23              THE COURT:  Now, if you would also turn to the

24   next page of the document, paragraph numbered 19.

25         Do you see the heading that states "Waiver of Appeal

1    and Postconviction Attack"?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Normally, if somebody goes to

4    court and gets found guilty after a trial, they would have a

5    right to appeal every aspect of the case to the Court of

6    Appeals.  By entering a plea of guilty here today, pursuant

7    to the terms of this plea agreement, paragraph 19

8    essentially says that you're giving up almost all of your

9    rights of appeal.

10        Do you understand that?

11                    THE DEFENDANT:  Yes.

12                    THE COURT:  This paragraph specifically allows

13   you to appeal, and it's about halfway down the paragraph,

14   any punishment that's in excess of the statutory maximum, or

15   you can appeal the Court's determination of your criminal

16   history category, or you could make an appeal based on a

17   contention that you would have that your attorney has not

18   provided effective assistance of legal counsel, or you can

19   make a claim that there's been prosecutorial misconduct.

20        Do you understand that?

21                    THE DEFENDANT:  Yes, I understand.

22                    THE COURT:  You told me that you're satisfied

23   with your attorney, so as you sit here right now, you know

24   of no basis on which to make a claim that you have received

25   ineffective assistance of legal counsel.

1           Is that correct?

2                     THE DEFENDANT:  That is correct.

3                     THE COURT:  Now, this same paragraph also says

4    that you can't come in and attack your sentence by way of

5    postconviction proceedings.  So let me put that in context.

6           It could be that Judge Boyko will send you to serve a

7    prison sentence.  And it could be that somebody sitting down

8    in the prison with you tells you how they went and filed

9    some sort of a petition with the Court to try to get their

10   sentence adjusted or otherwise bring some concern to the

11   attention of the Court.

12          Do you understand that this paragraph of the

13   agreement will effectively prevent you from being able to

14   make such an attack at a later date?

15                    THE DEFENDANT:  (Inaudible).

16                    THE COURT:  Now, do you have a copy of the

17   sentencing guidelines table --

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  -- on the table?

20          Have you looked over this table and do you feel you

21   understand how it works?

22                    THE DEFENDANT:  Beg your pardon?

23                    THE COURT:  Have you looked at this table and

24   do you feel like you have an understanding of how it works?

25                    THE DEFENDANT:  Yes.

1           THE COURT:  It's important to understand that

2   sentencing guidelines are just that:  They're guidelines.

3   They're the beginning point for a district judge's

4   consideration of the sentence.  But I want to make sure you

5   understand this.

6           So usually in a plea hearing I ask a person who is

7   considering making a guilty plea to look at the chart so

8   they can confirm for me they understand how it works.

9           So let's suppose that the offense level that's

10  involved in this case is a 20.  And let's say that your

11  criminal history classification is II.

12          If you put those two together on this table, what

13  would be the range in months that such a person could be

14  facing?

15              THE DEFENDANT:  At the criminal history of a

16  II, it will be 33 to 41 months of imprisonment according to

17  this sentence table.

18              THE COURT:  Now, I think you're looking at the

19  wrong row.  I'm talking about --

20              THE DEFENDANT:  You said 20?

21              THE COURT:  Yes, 20.

22              THE DEFENDANT:  I'm sorry.  Level II, 20, it

23  will be 37 to 46.  I'm sorry.

24              THE COURT:  Correct.  All right.

25          So you understand how the table works, and you

1    understand that that is a guidance that Judge Boyko would

2    use as a part of his overall sentencing evaluation.

3         Correct?

4                   THE DEFENDANT:  Yes.

5                   THE COURT:  Now, I'm assuming, Mr. Taylor,

6    you've had an opportunity to discuss with Attorney Peterson

7    how the sentencing commission guidelines might apply in your

8    particular case.

9         Correct?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  And in the plea agreement there's

12   discussion of sentencing guidelines on page number 5,

13   paragraph 16.

14        Do you see that?

15                  THE DEFENDANT:  Yes.

16                  THE COURT:  And so looking at this sentencing

17   guidelines computation, this represents that the attorneys

18   for the Government and the defense have both agreed that

19   under the particular facts and applicable laws in this case,

20   the guidelines computation would reveal a guidelines offense

21   level of 24.

22                  THE DEFENDANT:  That is correct.

23                  THE COURT:  All right.  Now, do you understand

24   that there is no agreement between the parties regarding

25   your criminal history category?

1            THE DEFENDANT:  Right.

2            THE COURT:  And do you understand that Judge

3   Boyko would determine that category at the time of

4   sentencing after he receives a report of the presentence

5   investigation?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And do you understand, as we've

8   talked about on a couple of occasions now, that the final

9   sentencing decision rests with Judge Boyko?  The Federal

10  sentencing law requires the Court to impose a sentence that

11  is reasonable and that the Court must consider the advisory

12  sentencing guidelines in effect at the time of sentencing as

13  a part of determining what a reasonable sentence is.

14            THE DEFENDANT:  Yes.

15            THE COURT:  And do you understand that the

16  Court will determine that classification after first

17  receiving a report of a presentence investigation?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Once the presentence investigation

20  is received, both your side of the case and the Government

21  will have an opportunity to comment on what has been

22  provided to the Court.  But at the end of the day, the

23  Court, and the Court alone, will determine the applicable

24  sentence in the case.

25        Do you understand that?

1            THE DEFENDANT:  Yes, I do.

2            THE COURT:  Do you understand, Mr. Taylor,

3   that the whole concept of parole has been abolished and that

4   a person released from prison under Federal law is now

5   released under what's called supervised release?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right.  We've covered a

8   variety of topics.  We've talked about your rights, we've

9   talked about the plea agreement, we've talked about

10   sentencing ranges and all of those topics.

11        Having discussed these various things, is it still

12   your desire to proceed with a plea of guilty here today?

13            THE DEFENDANT:  Yes, it is, Your Honor.

14            THE COURT:  All right.  Now I need to review

15   the portion of the plea agreement that sets forth the facts

16   involved in this case.  The facts are alleged in a general

17   fashion in the information, but they're alleged in a more

18   specific fashion in Attachment A to the plea agreement.

19        Do you have that available to you?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Now, keep your finger on that and

22   then refer back to the plea agreement itself, and

23   specifically on page 7 of the plea agreement.

24        Do you see paragraph 21 on page 7?

25            THE DEFENDANT:  Yes.

1          THE COURT:  Now, paragraph 21 is under the

2   heading "Factual Basis and Relevant Conduct."

3          Paragraph 21 states that the defendant agrees that

4   the following summary fairly and accurately sets forth the

5   defendant's offense conduct and a factual basis for the

6   guilty plea.

7          Defendant further agrees that the facts set forth in

8   the summary are true and could be established beyond a

9   reasonable doubt if the case were to proceed to trial.

10         Do you see what I just read?

11              THE DEFENDANT:  Yes, I do.

12              THE COURT:  Immediately following that

13   statement is the sentence that states, "See Attachment A

14   which is incorporated fully herein."

15         Correct?

16              THE DEFENDANT:  Yes.

17              THE COURT:  So now if you go back to

18   Attachment A, do you see that Attachment A itself consists

19   of about three and a half pages of typewritten text with

20   paragraphs 1 through 23?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Have you read Attachment A,

23   Mr. Taylor?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Attachment A essentially details

1   what it is that the Government's contending that you have

2   done here.  I want to review some parts of that.

3           But let me ask you in a general fashion, when you

4   read that document, did you see anything in Attachment A

5   that you felt was not accurate?

6                   THE DEFENDANT:  None.

7                   THE COURT:  Did you see anything in Attachment

8   A that you felt was not true?

9                   THE DEFENDANT:  No.

10                  THE COURT:  Did you see anything in Attachment

11  A that you thought was misleading because somehow it left

12  out some key fact?

13                  THE DEFENDANT:  No.

14                  THE COURT:  All right.  So paragraph 1 of

15  Attachment A says that every year from 2012 to 2017 the City

16  of Cleveland Demolition Bureau, which is a Government

17  organization defined under Federal law, received benefits in

18  excess of $10,000 under a Federal program.

19          Do you see that statement?

20                  THE DEFENDANT:  Yes.

21                  THE COURT:  Is that a true statement?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  Now, obviously as I've -- as I go

24  through these paragraphs, I'm not going to read them word

25  for word, but what I'm trying to do is summarize them so you

1    and I can be on the same wavelength and for efficiency.

2         Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  So at paragraph 2 it indicates

5    that you were employed by the City of Cleveland as the chief

6    of the demolition bureau.

7         Is that correct?

8              THE DEFENDANT:  That is correct.

9              THE COURT:  Is that a true statement?

10              THE DEFENDANT:  That's a true statement.

11              THE COURT:  Now, this states among other

12    responsibilities you were responsible for assigning

13    board-ups to -- or boarded up homes to contractors so those

14    homes could be demolished.

15         Is that correct?

16              THE DEFENDANT:  That is correct.

17              THE COURT:  Now, paragraph 3 begins to detail

18    bribes that were received from what's identified as

19    contractor number 1.  So paragraphs 3 down through 12 all

20    deal with your dealings with the identified contractor

21    number 1.

22         Correct?

23              THE DEFENDANT:  Right.

24              THE COURT:  It states that from about November

25    7 of 2013 you knowingly attempted to obstruct, delay, or

1    affect commerce in the movement of articles and commodities

2    in commerce by extortion.  That is, you obtained property,

3    to wit, approximately $8,000 in cash, not due to you or your

4    office from contractor number 1 with the consent of

5    contractor number 1 under color of official right.

6          Now, actually the paragraph says contractor number 1

7    and then contractor number 2.  We're going to deal with that

8    error right now.

9                    THE DEFENDANT:  Yeah, that's --

10                   MR. PETERSON:  Yeah.

11                   THE COURT:  So do you see, Mr. Taylor, where

12   the last line of paragraph 1 -- pardon me, paragraph 3

13   refers to contractor number 2?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  Do you understand, sir, that that

16   should have been contractor 1?

17                   THE DEFENDANT:  That is correct.

18                   THE COURT:  Can you cross -- well, I'm going

19   to provide the original of this document to you and allow

20   you to cross out "contractor number 2," and then you can

21   initial it in the margin.

22         Mr. Peterson?

23                   MR. PETERSON:  Thank you.

24                   THE COURT:  This is actually why we go through

25   these things in court.

1          MS. RICE:  Yes.  Thank you, Your Honor.

2          I'll also initial once you finish.

3          Thank you for catching that.

4          THE COURT:  Mr. Peterson, can you provide that

5    to Attorney Rice?

6          MR. PETERSON:  Yes.  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          The record should reflect that both Mr. Taylor and

9    his counsel and Attorney Rice have now all initialed

10   paragraph 3 of Attachment A to the plea agreement, and they

11   have modified what was indicated to be "contractor number 2"

12   to be "contractor number 1."

13          Is that correct, Mr. Taylor?

14          THE DEFENDANT:  That is correct.  Yes.

15          THE COURT:  All right.  So paragraph 4

16   indicates that in November 2013 you and contractor 1 agreed

17   that contractor 1 would pay you $8,000 in exchange for

18   contractor number 1 being put on the bid list for this first

19   premises.

20          Is that true?

21          THE DEFENDANT:  That is correct.

22          THE COURT:  Are those all true statements?

23          THE DEFENDANT:  Very much.

24          THE COURT:  And then it goes on to state that

25   in or around November 2013, this contractor, number 1, was

1   invited to bid on premises number 1.  About two days later,

2   according to paragraph 6, on November 11, 2013, contractor

3   number 1 submitted a bid.  The next day, November 12, 2013,

4   according to paragraph number 7, contractor number 1 was

5   awarded the demolition job.

6          Now, paragraph 8 asserts that on or about December 4,

7   2013, contractor 1 gave you approximately $3,000 cash.

8          And paragraph 9 asserts at various other times

9   between November 2013 and November 2015, contractor 1 gave

10  you an additional $5,000 in cash.

11         Do you see those statements?

12                THE DEFENDANT:  Yes, I do.

13                THE COURT:  Mr. Taylor, are all those

14  statements true?

15                THE DEFENDANT:  Pretty much.  Yes, pretty

16  much.

17                THE COURT:  Are they -- when you say "pretty

18  much," that suggests to me that there's something about

19  the --

20                THE DEFENDANT:  Yes, yes.  I'm sorry.  Yes.

21                THE COURT:  Yeah, I don't mean to be clever

22  with you, but if you're acknowledging that these statements

23  are all accurate and factual, that's what I'm asking.

24                THE DEFENDANT:  Yes.

25                THE COURT:  All right.  Paragraph 10 states

1    that in or about October 2015, you notified contractor 1

2    about an emergency demolition job on East 123rd Street and

3    Coltman Road.

4         Is that true?

5              THE DEFENDANT:  Yes.

6              THE COURT:  It goes on to state that you

7    instructed contractor number 1 to contact the City of

8    Cleveland so that that contractor could be placed on the bid

9    list for such premises, premises 2.  And it states that you

10   asked contractor 1 for $12,000 in exchange for notifying

11   contractor number 1 about the emergency demolition job.

12        Are those statements all true?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Paragraph 11 asserts that on or

15   about October 2015, contractor 1 was awarded abatement work

16   for premises number 2.  But it goes on to state that

17   contractor number 1 never paid you the $12,000.

18        Is that all --

19             THE DEFENDANT:  That's correct.

20             THE COURT:  Is that all true?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Paragraph 12 asserts that from on

23   or about November 7, 2013, through on or about September 1,

24   2017, in the Northern District of Ohio Eastern Division,

25   you, a public official, otherwise than as provided by law

1    for proper discharge of official duties, directly and

2    indirectly did demand, seek, receive, accept, and agree to

3    receive and accept something of value personally for and

4    because of an official act performed and to be performed by

5    such official, that is, getting contractor number 1 on the

6    bid list with the City of Cleveland for a demolition job at

7    premises number 1 and notifying and instructing contractor

8    number 1 to bid on the emergency work for premises number 2.

9         Do you see the paragraph I just read that from,

10   Mr. Taylor?

11                THE DEFENDANT:  Yes.

12                THE COURT:  Are all those statements accurate?

13                THE DEFENDANT:  Yes.

14                THE COURT:  And true?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Beginning in paragraph number 13

17   and going on to the end of the Attachment A, information is

18   provided detailing your dealings with contractor number 2.

19        So paragraph 13 states that from about August 1 of

20   2015, continuing through July 21, 2016, you did knowingly

21   attempt to obstruct, delay, and affect commerce in the

22   movement of articles and commodities by extortion.  That is,

23   you obtained property, to wit, approximately $5,800 in cash

24   not due to you or your office, from contractor number 2 with

25   the consent of contractor number 2 under color of official

1     right.

2              Mr. Taylor, are all those statements true?

3                   THE DEFENDANT:  Yes.

4                   THE COURT:  Now, paragraphs 14 and on then go

5     on to detail exactly how that took place.  Paragraph 14 says

6     that on or about August 20, 2015, you provided contractor 2

7     with bid numbers for a pending demolition job on Cedar

8     Avenue.

9              Paragraph 15 indicates that on or about that same

10    day, August 20, 2015, you provided contractor 2 with bid

11    numbers for a pending demolition job on Cedar Avenue.

12             Paragraph 15 indicates that on or about that same

13    day, August 20, the City of Cleveland awarded contractor

14    number 2 the demolition job for premises number 3, that is,

15    the Cedar Avenue property.

16             Paragraph 16 indicates that on or about October 26,

17    this contractor, number 2, gave you approximately $5,000

18    cash for providing that contractor with the bid numbers for

19    that premises.

20             Paragraph 17 indicates that on or about May 7, 2016,

21    you provided contractor number 2 the names of companies

22    bidding on a separate demolition job on East 130th Street,

23    premises 4.

24             Paragraph 18 indicates that you instructed contractor

25    2 to wait until almost 3:00 in the afternoon on or about May

1    10, 2016, the final day of bidding for premises 4, to place

2    a bid.

3        And paragraph 19 states that on or about May 10,

4    2016, at 2:29 p.m., you called contractor number 2 and

5    informed them of the then current lowest bid for the job at

6    premises 4.

7        Paragraph 20 asserts that on or about May 25, 2016,

8    contractor number 2 gave you approximately $500 in cash.

9        Paragraph 21 asserts that on or about July 21, 2016,

10   you contacted contractor number 2 and stated that he needed

11   some, quote/unquote, stacks.

12       Paragraph 22 asserts that on or about July 21

13   contractor number 2 gave you approximately $300 cash.

14       Are all the statements that I just read, Mr. Taylor,

15   from those various paragraphs from 14 through 22 all

16   completely true and accurate?

17                 THE DEFENDANT:  Yes.

18                 THE COURT:  Paragraph 23 asserts that from on

19   or about August 1, 2015, through on or about July 21, 2016,

20   within this district, you, a public official, otherwise than

21   as provided by law for the proper discharge of official's

22   duties, directly and indirectly, did demand, seek, receive,

23   accept and agree to receive and accept something of value

24   personally, for and because of an official act performed and

25   to be performed by you, that is, providing contractor 2 a

1    list of companies bidding on the demolition job at premises

2    4, informing contractor 2 of the then current lowest bid for

3    the demolition job at premises 4 immediately before the

4    closing of bidding, and, lastly, providing contractor 2 with

5    the bid numbers for premises number 3.

6            Mr. Taylor, are all the statements in paragraph 23 of

7    Attachment A true and accurate?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Now, I've gone over each of the

10   paragraphs in the attachment at least in summary fashion.

11   I've already asked you if there was anything in those

12   paragraphs from your review of the document that you felt

13   was not true and accurate, and you've indicated that you saw

14   nothing.

15           Now having gone over it in more detail, is there

16   anything at all, sir, that you challenge in what the Court

17   has reviewed with you?

18                    THE DEFENDANT:  No.

19                    THE COURT:  Is there anything that you believe

20   is in any way misleading or incomplete?

21                    THE DEFENDANT:  No.

22                    THE COURT:  So can I have you indicate,

23   Mr. Taylor, whether you agree that all of the paragraphs in

24   Attachment A, 1 through 23, are all completely true and

25   could be proven by the Government beyond a reasonable doubt

1    if the case were to proceed to trial?

2                    THE DEFENDANT:  It's true.

3                    THE COURT:  Now, looking back at the plea

4    agreement itself, paragraph 22 on page 7, there's an

5    acknowledgement in that paragraph that you acknowledge that

6    the above summary of your conduct has not set forth each and

7    every fact that the U.S. Attorney's Office could prove at

8    trial, nor does it encompass all of the acts which the

9    defendant committed in furtherance of the offenses to which

10   you are pleading guilty.

11       Do you see that paragraph, Mr. Taylor?

12                    THE DEFENDANT:  Yes, I see the paragraph.

13                    THE COURT:  Is that all true?

14                    THE DEFENDANT:  Yes.

15                    THE COURT:  As you sit here right now, having

16   reviewed the factual statements that we've just gone

17   through, do you believe any changes need to be made to any

18   of those factual paragraphs in order to make them more

19   completely accurate or true?

20                    THE DEFENDANT:  Just that first one we changed

21   with the jobs.

22                    THE COURT:  Just with the clarification that

23   we modified?

24                    THE DEFENDANT:  Yes, the clarification on

25   that.

1           THE COURT:  But apart from that, is there any

2    other change you believe needs to be made?

3           THE DEFENDANT:  None.  No.

4           THE COURT:  All right.  Counsel, the Court's

5    reviewed in some considerable detail with Mr. Taylor all the

6    procedural provisions involved in a plea of guilty.  I

7    reviewed the plea agreement.

8        Is there anything that either counsel for the

9    Government or defense feels needs to be covered before I

10   receive the defendant's plea?

11       Ms. Rice?

12          MS. RICE:  No, Your Honor.  You've

13   sufficiently covered it.  Thank you.

14          THE COURT:  Mr. Peterson?

15          MR. PETERSON:  There's how I feel, Your Honor.

16   There's nothing else to say.

17          THE COURT:  All right.  Mr. Taylor, I am now

18   prepared to receive your plea.  Do you wish to confer with

19   counsel for any purpose before I ask what your plea is, or

20   do you have any questions for me before I ask what your plea

21   is?

22          THE DEFENDANT:  I have no questions.

23          THE COURT:  All right.  Sir, I do find for the

24   record that you are competent to proceed today.  And having

25   advised you of your rights and found a factual basis for

1   your plea, I am going to now ask you to advise me how you

2   wish to plead to Count 1 and Count 2 of the information.

3   Guilty or not guilty?

4            THE DEFENDANT:  Guilty.

5            THE COURT:  Based upon this plea colloquy, I

6   do find that the defendant is fully competent to and capable

7   of entering into an informed plea.  I find that he is aware

8   of the nature of the charges brought against him in this

9   matter and the consequences in terms of potential penalties

10  of making a plea of guilty.

11           I further find that his plea of guilty in response to

12  Counts 1 and 2 of the information in this case is entered

13  knowingly, voluntarily, and intelligently and is supported

14  by an independent basis in fact containing each of the

15  essential elements of the offenses charged.

16           I therefore will be recommending to Judge Boyko that

17  he approve the plea agreement in its entirety, that he

18  accept Mr. Taylor's plea of guilty, and I will recommend

19  that he adjudge him guilty of the offenses charged in the

20  information as Counts 1 and 2.

21           I am going to order that a presentence investigation

22  be conducted and that a report of that investigation be

23  prepared so that it may be submitted to Judge Boyko prior to

24  sentencing.

25           Now, Mr. Taylor, it is in your interest to cooperate

1    fully with the Probation Department as it prepares a

2    presentence investigation.  Presentence reports are highly

3    influential to judges as they make sentencing decisions in

4    the case.  You've done the hard part by coming to court and

5    acknowledging your responsibility and entering a plea of

6    guilty.  Now it's time to get on with the next phase of your

7    life, which is dealing with the future.

8         Do you understand what I'm saying?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  You will have a right to review

11   and examine and comment upon the presentence report prior to

12   the imposition of sentencing.

13        Sentencing in this case is going to be conducted by

14   Judge Boyko.  He has asked us to schedule a sentencing

15   hearing for December 18, 2018, at 11:00 in the morning.

16        Does the United States have a motion respecting

17   detention or bond pending the sentencing hearing?

18             MS. RICE:  Thank you, Your Honor.  The United

19   States concurs in the recommendation of Pretrial Services

20   regarding the unsecured bond and the other conditions

21   outlined in the Pretrial Services report.

22             THE COURT:  And, Mr. Peterson, what's the

23   defense's response to that recommendation?

24             MR. PETERSON:  Well, obviously, Your Honor, we

25   don't have any objection to bond.  We would ask that the

1    Court set the recommended personal bond.  I've gone over the

2    presentence report with him -- or the report for today, the

3    pretrial report.  He understands what he must do if the

4    Court is kind enough to set the $20,000 unsecured bond.  He

5    understands everything.

6              THE COURT:  Given the nature of the

7    allegations in this case and the other information set forth

8    in the report of Pretrial Services which was prepared by

9    Pretrial Officer Patrick LaVecchia, who is in court here

10   with us today, I do concur that bond is appropriate in this

11   case.

12        And, Mr. Taylor, you are going to be released on a

13   $20,000 unsecured bond.  What that means is you're not

14   required to put up any cash in order to be released.  But

15   it's important to understand if you do not comply with the

16   requirements of bond or your pretrial release, you do face

17   the potential to forfeit up to $20,000.

18        Do you understand that?

19        (Attorney-client conference.)

20              THE DEFENDANT:  I'll -- I understand.  I will

21   appear.

22              THE COURT:  As a -- as conditions of your

23   pretrial release, Mr. Taylor, let me indicate to you that

24   you will be subject to reporting to Pretrial Services on a

25   schedule that they will set for you.  It may be in person,

1    it may be by telephone, but they will make arrangements with

2    you for some kind of a reporting schedule.

3              Do you understand that?

4                     THE DEFENDANT:  Yes.

5                     THE COURT:  You are going to be restricted

6    from obtaining any passport or any other form of

7    international travel documents during this time of your

8    release.

9              Do you have a passport currently?

10                    THE DEFENDANT:  No.

11                    THE COURT:  All right.  You may not obtain

12   one.

13              Your travel is going to be restricted to the Northern

14   District of Ohio, which is essentially the northern half of

15   this state.  If an occasion rises where you feel you must

16   travel outside that district, you have to obtain permission

17   in advance either from the Court or from your Pretrial

18   Services officer.

19              Do you understand that?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  So it's not to say you can never

22   travel, but you're under restriction.

23              Do you have a question about that?

24                    THE DEFENDANT:  If there's an emergency.  If I

25   was to arise with an emergency with a family member, do I

1   still get with the courts to let them know?

2                   MR. PETERSON:  You let your probation officer

3   know right away.

4                   THE DEFENDANT:  Okay.

5                   THE COURT:  The probation officers are always

6   just a phone call away.

7                   THE DEFENDANT:  Okay.

8                   THE COURT:  So, yes, you would notify your

9   probation officer before you leave.

10                  THE DEFENDANT:  Okay.  That sounds good.

11                  THE COURT:  All right.  You must avoid any

12  contact with anyone who is an alleged victim or potential

13  codefendant in this case.  Obviously, we've just gone

14  through lengthy discussion of contractor 1, contractor 2,

15  these various premises.  You may not have contact with

16  people who are potential witnesses or alleged victims in

17  this case.

18       Do you understand that?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  Now, that restriction prevents you

21  from having direct or indirect contact.  So direct contact

22  means you can't go see them, can't call them on the phone,

23  you can't text them, you can't Facebook message them,

24  anything like that.

25       Indirect contact means you can't ask anyone else to

1    contact them for you.

2            Do you understand what I mean by that?

3                    THE DEFENDANT:  I understand.  I understand.

4                    THE COURT:  And, Mr. Taylor, if you have any

5    contact with law enforcement during your time of release, in

6    other words, you're pulled over by the police or something

7    happens like that, you have to notify your Pretrial Services

8    officer that you had such contact.  They'll know you did

9    because they can get reports of such things, but it's

10   important that you let them know first.

11           Do you understand that?

12                   THE DEFENDANT:  I understand.

13                   THE COURT:  Now, to the extent any of the

14   people who may be involved in the criminal activity that's

15   been discussed here in court today are potential

16   codefendants, people who could be charged down the road, or

17   anyone else that you know who could be charged, you may not

18   have contact with those individuals as well.

19           Do you understand that?

20                   THE DEFENDANT:  I understand that.

21                   THE COURT:  Officer LaVecchia, have we covered

22   all of the requirements that you wanted included?

23                   PRETRIAL SERVICES OFFICER LaVECCHIA:  Yes,

24   Your Honor.

25                   THE COURT:  All right.  Mr. Taylor, it kind of

1    goes without saying but let me say it anyway:  Obviously

2    while you're on release, you can't commit any other new

3    offenses, violations of state, Federal, or local law.  If

4    you do, you run the risk of being taken back into custody

5    until the time of sentencing.

6         Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  So we will have the

9    bond documents for you and your attorney to review and sign

10   before you leave court here today.  As soon as those records

11   are processed, you would be released.

12        At this stage is there anything further from counsel

13   for the United States?

14             MS. RICE:  No, Your Honor.  Thank you.

15             THE COURT:  Mr. Peterson, from the defense?

16             MR. PETERSON:  No, Your Honor.  Thank you.

17             THE COURT:  Thank you everyone.

18        (Proceedings adjourned at 3:29 p.m.)

19                         *  *  *  *  *

20                **C E R T I F I C A T E**

21

22        I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter.
     This transcript was prepared to the best of my ability from
23   a digital audio recording of the proceedings provided by the
     Court.

24
          */s/ Lance A. Boardman_____  09/20/2018*
25        Lance A. Boardman, RDR, CRR              DATE